## W. L. ELLIS & CO. v. QUANAH COTTON OIL CO.    (No. 6358.)

(Court of Civil Appeals of Texas. Austin. May 25, 1921. Rehearing Denied Oct. 3, 1921.)

1. Appeal and error ⟺742(1) — Substantial conformity to rules as to assignments of error, etc., sufficient.

A substantial compliance with the rules relative to assignments of error, propositions, and statements is enough, and the assignments may be considered notwithstanding the failure to conform to the letter of the rules where they do not call for any great labor on the part of the court.

2. Sales ⟺182(1) — Evidence held to make question for jury as to waiver of comparison with sample.

In a seller's action for breach of a contract for the sale of cotton by sample, evidence *held* to make a question for the jury as to whether the buyer waived inspection or comparison of the samples and committed the question of quality and grade to the sound judgment of the seller's representative.

3. Sales ⟺38(2)—Misrepresentation of quality by seller need not be willful to constitute fraud.

It was not necessary that a seller's false representation of the quality of cotton should be willful to constitute fraud, if it was made without knowledge whether it was true or false.

4. Sales ⟺182(3) — Whether buyer waived right to full amount and was bound to accept part complying with contract held question of fact.

Where a sale of cotton embraced 100 bales which were shipped in two lots, one of which, consisting of 12 bales, complied with the contract and the other of which did not, it was a question of fact whether the buyer waived its right to the full amount purchased so as to be liable for the price of the 12 bales.

On Rehearing.

5. Sales ⟺88—Whether sale was by sample held in issue under pleadings and evidence.

Though a seller of cotton suing for breach of contract did not plead a sale by sample, where the buyer did plead such sale and offered evidence tending to support that theory the issue was raised by the pleadings and the evidence.

6. Sales ⟺88—Evidence held to make question for jury whether sale was by sample.

In an action by a seller of cotton for breach of contract, evidence *held* to make a question for the jury as to whether the sale was by sample.

7. Sales ⟺387—Whether seller acted properly and promptly in retaking possession and selling on buyer's rejection held question of fact.

Whether a seller of cotton properly and promptly exercised its right to take possession of the cotton and resell it upon being advised by the buyer of its rejection and whether a resale on a holiday was proper were questions for the decision of the jury, though the evidence strongly tended to show that no damage was caused by any delay, and it was agreed that the cotton brought the best price obtainable on the day of sale.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Action by the Quanah Cotton Oil Company against W. L. Ellis & Co. From a judgment on an instructed verdict for plaintiff, defendant appeals. Reversed and remanded.

W. J. Scott and McCartney, Foster & McGee, all of Brownwood, for appellant.

Harrison, Cavin & Key, of Brownwood, for appellee.

BRADY, J. Appellee sued W. L. Ellis, trading in the name of W. L. Ellis & Co., to recover damages arising out of an alleged breach of contract for the sale of certain cotton. The sale was of 100 bales of inferior grade of cotton, designated by the parties as type 9. The petition alleged that the cotton was finally accepted at Quanah, Tex., in two lots of 88 and 12 bales respectively, and that the acceptance was through I. E. Ellis, the duly authorized agent of appellant. It was further alleged that the cotton was shipped in the name of appellant as consignor to Houston, Tex., notify Anderson Clayton & Co., and that demand drafts were drawn on the same day by appellant upon himself, payable at Brownwood, where appellant was doing business. It was averred that the cotton was rejected by appellant, and payment of the drafts refused, because it was claimed the cotton was not equal to type 9. A resale of the cotton at Houston for appellant's account was alleged, and damages claimed for the difference in market value and other elements of loss, incident to the sale.

Appellant denied acceptance of the cotton and the authority of I. E. Ellis to bind him, as well as pleading that the quality of the coton shipped was not up to the grade of the samples under which the sale was made There was an averment of legal fraud by appellee in misrepresenting the grade of the cotton and inducing I. E. Ellis to accept and order the cotton shipped. It was also urged that the resale was made on a holiday, and not with reasonable dispatch, after appellee was informed of the rejection of the cotton.

The trial court gave a peremptory instruction for appellee, and from the judgment entered on the verdict this appeal was taken.

[1] There are a number of objections to the consideration of all the assignments, some of which are regarded as hypercritical. A careful examination of the criticisms has convinced us that they are all without merit, and invoke a too critical application of the rules. In the view of this court, the rules are intended to promote, and not to stifle, justice.

⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

It is enough that there has been a substantial compliance. Railway Co. v. Pemberton, 106 Tex. 466, 161 S. W. 2, 168 S. W. 126.

The assignments will be considered on their merits. It is doubtless true that some of them do not conform to the letter of the rules, especially as to the scope of the statements under propositions. However, they do not call for any great labor on our part, and are not such gross violations as would justify us in disregarding them, especially where there has been an instructed verdict.

A careful consideration of the evidence has convinced us that the trial court erred in giving the peremptory instruction, because there were material issues of fact for the jury to decide. The sale was admittedly one by sample. While the evidence might have been sufficient to sustain a finding that there was a waiver of the right of inspection, and a final acceptance by appellant, after inspection, and in reliance upon the honest judgment of Mr. Kelly, we do not think the evidence of such a conclusive character as to justify an instructed verdict.

[2] It is unnecessary to set out the evidence in detail. The testimony of I. E. Ellis and W. L. Ellis, in reference to the limited authority of the former in this particular matter, and the positive testimony of I. E. Ellis that he told Mr. Kelly, the representative of appellee, that he knew nothing about such grades of cotton, especially type 9, and that they would expect Mr. Kelly to match up with the samples, while susceptible of another construction, might well have justified the inference that there was no intention to waive inspection or comparison of the samples, and no purpose to commit the question of quality and grade to Mr. Kelly's sound judgment. Indeed, Mr. Kelly's own testimony tends to support the latter view, since he testified that he made no effort or attempt to pass on type 9 cotton for I. E. Ellis. This is sufficient, we think, although there is other evidence, to make the question one for the jury.

[3] We also entertain the view that the evidence raised the issue as to whether or not appellee exercised due diligence to sell the cotton to the best advantage and within proper time. The testimony tended to show that the seller retained such control over the cotton until payment of the drafts to which the bills of lading were attached as that it could have taken possession and have resold the cotton when advised by the buyer that he had rejected it. Whether this could or should have been done at Quanah and more promptly than was done are questions of fact. Appellee did exercise this right when the cotton arrived at Houston. Whether it was done promptly or properly are questions primarily for the decision of the jury. This conclusion also applies to the claim that the cotton should not have been sold on a holiday.

[4] As to the question of fraud, the proper submission of any such issue upon another trial will depend upon the evidence. It does not seem to be seriously or specifically claimed that it was raised by the evidence in the record. It is thought proper to say, however, that if the issue should be presented, we agree with counsel for appellant that it is not necessary that a false representation should be willful. The trend of decisions by our Supreme Court has been steadily to the principle that it is as much fraud to misrepresent that which the party does not know to be true or false as to state it with absolute knowledge of its falsity. No person should be heard to say:

"It is true that I made a false statement of fact to another, upon which he acted, to his detriment, but I did not know it to be false."

As to the 12 bales of cotton, which are now admitted to have been up to type 9, it is insisted that we should at least affirm the judgment. Appellant bought 100 bales of that grade to fill orders from others. He was entitled to that quantity, unless he waived the right. We cannot say, as a matter of law, that he did waive it simply because there were two shipments of the lot, one of which came up to sample. This, too, would seem to be a question of fact.

The other questions raised will probably not arise upon another trial; hence we express no opinion upon them. For the reasons given, the judgment is reversed, and the cause remanded.

Reversed and remanded.

KEY, C. J., not sitting.

### On Rehearing.

BRADY, J. Counsel for appellee have filed a strong and persuasive motion for rehearing. While not convinced that we were in error in our original opinion, there are certain phases of the argument on rehearing which we desire to discuss.

We stated that the sale in question was admittedly one by sample, and, in effect, that the chief questions on the appeal were whether there had been a waiver of the right of inspection by the buyer, or a final acceptance, after full inspection.

[5] It now appears that this statement was too broad, since the appellee did not plead a sale by sample and does not admit that such was the character of the sale. The statement was made in the original opinion, because the respective propositions in the briefs seemed to so treat the transaction. Be this as it may, appellant did plead a sale by sample, and offered evidence tending to support the theory. Hence the issue was raised by the pleadings and the evidence.

[6] Appellee has cited cases to the effect that the mere exhibition of a specimen of goods, during a negotiation for their sale,

does not necessarily make a sale by sample, but it must appear that the parties understood that they were dealing with reference to the sample. We do not doubt the correctness of this rule, and there is nothing in our opinion to the contrary. We simply held that there was evidence sufficient to make it a jury question whether the sale was by sample, and whether there was a waiver of inspection or final acceptance after inspection.

It is earnestly insisted that the undisputed evidence showed that, if there was any sale by sample, it was when the samples were taken and exhibited to I. E. Ellis at Quanah, when he ordered the cotton shipped and drew the drafts in payment; furthermore, that the undisputed evidence shows that W. L. Ellis & Co. waived inspection and committed the question of the grade or quality of the cotton, tendered for delivery, to the judgment of Mr. Kelly, who was the "spot cotton man" of appellee.

We will not undertake to set out the evidence in detail. As stated in the original opinion, there was ample evidence to raise these issues. Mr. Kelly testified that, at the request of I. E. Ellis, he made up and sent samples of "type 9" cotton to Brownwood long before the sale was made, for the examination and inspection of W. L. Ellis at Brownwood. He also testified that he kept a duplicate of that type at the Quanah office, and that the 88 bales came up to the type he had sent to Brownwood. Further, he testified that the 100 bales in controversy were bought by the same type that the 500 bales of the same character of cotton had previously been bought. A fair inference is that he meant the original type samples which he had sent to Brownwood.

The testimony of I. E. Ellis is to the same effect, and tends strongly to show that the cotton was bought by the samples originally sent to appellants' office at Brownwood. The testimony of W. L. Ellis tends to show that he understood the original samples were to be used for comparison with the cotton tendered for delivery.

I. E. Ellis also testified that the samples exhibited to him at Quanah were sent to W. L. Ellis for comparison with the original samples. It is contended by appellee's counsel that this testimony is nullified by his further statement that nothing was said before or at the time as to the purpose of sending the latter samples to Brownwood. We do not think so. If there was a conflict here, which does not necessarily appear, it was properly a matter for the jury.

As to the issue that there was a waiver of the right of inspection and an agreement to leave the question of quality up to Mr. Kelly, as the representative of W. L. Ellis & Co., or a final acceptance through I. E. Ellis, after inspection of true samples of the cotton actually shipped, we repeat that the evidence raises a jury question. We again call attention to Mr. Kelly's testimony that he made no effort to pass on type 9 cotton for I. E. Ellis; also to the testimony of the latter that he made no inspection of the samples, was not qualified to do so, and had the last-drawn samples sent to W. L. Ellis for comparison by him.

[7] Our opinion is also assailed because we held that the evidence raised the issue as to whether appellee might have lessened the damages by making a resale more promptly, and not on a holiday. We agree with appellee that the evidence strongly tends to show that no damage was caused by any delay, but it is not conclusive. There was evidence that there was a rise in the market for regular grades between the date the cotton was rejected and the date of sales. True, it was agreed that this cotton brought the best price obtainable on the day of sale, but this does not conclude the question. The regular market affects or influences the price for low-grade cotton to some extent. Therefore the sale on a holiday, when there was no regular market, and perhaps the failure to sell on an earlier day or at a more favorable time, might have affected the amount of damages. Of course, we cannot tell what the evidence will be on another trial, but we have sufficiently indicated our view of the matter.

Appellee insists that our opinion lays down a very dangerous rule, as applied to the cotton business, as it opens the doors to fraud by unscrupulous speculators. Specifically, the claim is that a buyer of cotton may order cotton, and then, after delivery, accept or reject it, accordingly as the market fluctuates in his favor or against him. In this we see nothing more than inheres in every sale by sample. If the vendor has properly protected himself in the terms of the sale, he would appear to be safe against fraud, if he only sees to it that the goods he delivers are what he impliedly represented by the samples exhibited.

Believing that the appeal has been correctly decided, the motion for rehearing is overruled.

Motion overruled.

KEY, C. J., not sitting.